UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| BRENDA L. ARGROW, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV422-042 |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Plaintiff Brenda Argrow seeks judicial review of the Social Security Administration's denial of her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).

## I.   GOVERNING STANDARDS

In social security cases, courts

> . . . review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation omitted). . . . "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation and brackets omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation omitted).

1

*Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). *see also Biestek v. Berryhill,* 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019) ("Substantial evidence . . . is 'more than a mere scintilla.' [Cit.] It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" (citations omitted)). Under the substantial evidence test, "findings of fact made by administrative agencies . . . may be reversed . . . only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Adefemi v. Ashcroft,* 386 F.3d 1022, 1027 (11th Cir. 2004).

The burden of proving disability lies with the claimant. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The ALJ applies

> . . . a five-step, "sequential" process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step. *Id.* § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe." *Id.* § 404.1520(a)(4)(ii). At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. *Id.* § 404.1520(a)(4)(iii). If not, the ALJ must then determine at step four whether the claimant has the [residual functional

>capacity ("RFC")] to perform her past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant can make an adjustment to other work, considering the claimant's RFC, age, education, and work experience. An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a [Vocational Expert (VE)].

*Stone v. Comm'r. of Soc. Sec. Admin.*, 596 F. App'x, 878, 879 (11th Cir. 2015) (footnote added).

At steps four and five, the ALJ assesses the claimant's RFC and ability to return to her past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004), *superseded by regulation on other grounds*, 20 C.F.R. § 404.1520c, *as stated in Jones v. Soc. Sec. Admin.*, 2022 WL 3448090, at *1 (11th Cir. Aug. 17, 2022). RFC is what "an individual is still able to do despite the limitations caused by his or her impairments." *Id.* (citing 20 C.F.R. § 404.1545(a)); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012). "The ALJ makes the RFC determination based on all relevant medical and other evidence presented. In relevant part, the RFC determination is used to decide whether the claimant can adjust to other work under the fifth step." *Jones v. Comm'r of Soc. Sec.*, 603 F. App'x 813, 818 (11th Cir. 2015) (quotes and cite omitted).

## II.  BACKGROUND

Argrow, born December 17, 1962, applied for DIB and SSI in July 2018. Tr. 303-04.  She alleged a disability-onset date of November 15, 2016, due to arthritis in her hands, feet, and lower back, diabetes mellitus, and hypertension.  Tr. 18-19, 303, 326.  She has an eleventh-grade education, tr. 327, and past relevant work as a security guard, tr. 23.

After a hearing, tr. 54-87, the ALJ issued an unfavorable decision ("Decision 1"), tr. 142-57.  The ALJ found that Argrow's mild arthritis of the hands and lumbar spondylosis constituted severe impairments but did not meet or medically equal a Listing.  Tr. 148-49.  The ALJ then found that Argrow retained the RFC for sedentary work "except she is unable to use hands for repetitive grasping."  Tr. 149-52.  Argrow, he determined, was able to perform her past relevant work as a security guard "as it was actually performed."  Tr. 152-53.  Therefore, she was found to be not disabled.  Tr. 153.

Argrow appealed, and the Appeals Council vacated Decision 1 and remanded the case back to the ALJ for further proceedings.  Tr. 158-63.

Relevant to this appeal, the Appeals Council granted her request for review, and identified the following issues, among others:

- The assessed residual functional capacity is vague regarding the limitation to repetitive grasping on the basis that repetitive is not defined by agency rules and regulation [cit.]. While it is known that the claimant cannot do repetitive grasping, it is unclear how much grasping she can do. Further consideration of the claimant's residual functional capacity is warranted[.]

- The hearing decision found that the claimant could return to her past relevant work as a security guard as actually performed based on the assessed sedentary residual functional capacity [cit.]. However, she reported that this job required her to stand/walk for 7 hours and lift up to 50 lbs [cit.]. These reports were not contradicted by the claimant's hearing testimony regarding her job duties [cit.]. As such, further consideration is needed as to whether the claimant can perform her past relevant work.

Tr. 159. Therefore, the remand order instructed the ALJ to:

- Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations [cit.].

- Give further consideration to whether the claimant has past relevant work and, if so, can perform it [cit.]. If warranted, obtain vocational expert evidence to assist in evaluating whether the claimant can perform past relevant work.

Tr. 160.

On remand, after another hearing, tr. 30-53, the ALJ issued another unfavorable decision ("Decision 2"), tr. 12-29. The ALJ again found that Argrow's mild arthritis of the hands and lumbar spondylosis constituted severe impairments but did not meet or medically equal a Listing.[1]  Tr. 18-19.  The ALJ then found that Argrow retained the RFC for sedentary work "except she can use her hands to finger and feel only occasionally.  There [are] no limitations as to grasping."  Tr. 19-23. Argrow, he again determined, was able to perform her past relevant work as a security guard "as actually performed." Tr. 23.  Therefore, she was found to be not disabled.  Tr. 24.  The Appeals Council denied review of Decision 2.  Tr. 1-6.  Argrow filed the instant lawsuit seeking judicial review of the ALJ's decision.  *See* doc. 1.

## III.  ANALYSIS

Argrow first argues that the ALJ did not follow the Appeals Council's remand order in formulating her RFC. Doc. 18 at 5-9.  In Decision 1, the ALJ found that Argrow retained the RFC for sedentary work, "except she is unable to use hands for repetitive grasping." Tr. 149.

---

[1]  The ALJ found Argrow's diabetes mellitus, hypertension, and obesity to be nonsevere.  Tr. 19.

6

The Appeals Council found this limitation vague, since "[']repetitive[']" is not defined by agency rules and regulation." Tr. 159. Its remand order stated: "While it is known that the claimant cannot do repetitive grasping, it is unclear how much grasping she can do." *Id.* Therefore, it concluded "[f]urther consideration of the claimant's residual functional capacity [was] warranted," and remanded with the instruction to "[g]ive further consideration to the claimant's maximum residual functional capacity . . . ." Tr. 159-60. On remand, the ALJ determined Argrow retained the RFC for sedentary work, "except she can use her hands to finger and feel only occasionally. There [are] no limitations as to grasping." Tr. 19. Argrow argues this is noncompliant with the remand order because the ALJ did not "clarify a 'known' limitation" on her ability to grasp in the RFC, instead he eliminated the grasping limitation entirely. Doc. 18 at 5-6.

The Acting Commissioner responds that the ALJ complied with the Appeals Council's order directing him to "[g]ive further consideration to [Plaintiff's] maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations." Doc. 21 at 5 (quoting tr. 160). The

7

Acting Commissioner disagrees with Argrow's interpretation of the Appeals Council's order, contending "the AC did not order the ALJ to include any limitation on grasping in the RFC assessment." *Id*. The ALJ "fully complied" with the remand order, the Acting Commissioner explains, because he "cited substantial evidence supporting his RFC assessment." *Id*.

Social Security regulations provide that, in the event the Appeals Council orders a remand, the ALJ "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. §§ 404.977(b), 416.1477(b). This Court previously noted that "[a] survey of cases addressing an ALJ's compliance with remand orders finds courts look to some *specific command* by the AC, and whether or not the command was accomplished." *Mepham v. Colvin*, 2016 WL 3675805, at *4 (S.D. Ga. July 6, 2016) (emphasis added), *adopted by* 2016 WL 4083751 (S.D. Ga. Aug. 1, 2016). A close review of the Appeals Council's order shows that the Acting Commissioner is correct, and the ALJ accomplished the specific commands of the Appeals Council. *See* tr. 159-60.

While the Appeals Council's order does acknowledge Decision 1's inclusion of limitations on "repetitive grasping" in its RFC, tr. 159, and uses somewhat vague language in describing the problems with that limitation, *id.*, it does not make any definitive finding that the claimant's RFC *must* include any limitations on grasping. *See* tr. 159-160. Instead, it vacates[2] Decision 1 because, among other things, "it is unclear how much grasping [claimant] can do." Tr. 159. Therefore, it instructs the ALJ, on remand, to "[g]ive further consideration to the claimant's maximum residual functional capacity." Tr. 160. The ALJ complied with the remand order by doing just that, further considering Plaintiff's RFC and issuing Decision 2 with a new RFC. *See* tr. 19-23.

Argrow relies on the Northern District of Georgia's decision in *Tauber v. Barnhart* to support her contention that Decision 2 is not compliant with the Appeals Council's remand order. *See* doc. 18 at 7 (quoting 438 F. Supp. 2d 1366, 1375-76 (N.D. Ga. 2006)). In *Tauber*, the

---

[2] Once the Appeals Council vacated Decision 1, it was "officially gone" and had "no legal effect whatever." *Zuniga v. Comm'r of Soc. Sec.*, 772 F. App'x 870, 871 (11th Cir. 2019); *cf. Gibbs v. Barnhart*, 130 F. App'x 426, 430 (11th Cir. 2005) ("Because the Appeals Council vacated the first ALJ's written decision with instructions for the ALJ to obtain and consider additional evidence, the specific findings contained in that first written decision were never conclusively established and were subject to modification.").

9

Appeals Council found the ALJ's prior decision "deficient because of its treatment of the 'sit/stand option' and that further review was therefore required." 438 F. Supp. 2d at 1375. The Court construed the remand order "as requiring the consideration of the 'sit/stand option,' *even if that consideration entailed the debunking thereof.*" *Id.* at 1375-76 (emphasis added). Therefore, because the ALJ on remand did not consider or discuss the "sit/stand option," he committed error. *Id.* at 1376. Here, by contrast, the ALJ *did* consider whether Argrow had any grasping limitations, and determined she did not. Tr. 19-23. This consideration is sufficient to comply with the Appeals Council's remand order.

Argrow alternatively argues that, even if Decision 2's RFC is not inconsistent with the Appeals Council's remand order, it does not include "appropriate rationale with specific references to evidence of record . . . in support of his decision to change Ms. Argrow's grasping limitation from 'unable to use [her] hands for repetitive grasping' . . . to 'no limitations to grasping.'" Doc. 18 at 7-8. Relatedly, she also challenges the ALJ's RFC finding as not supported by substantial evidence. *Id.* at 11-13. The Acting Commissioner correctly observes that these two arguments "concern essentially the same allegation that the ALJ did not

adequately evaluate Plaintiff's RFC." Doc. 21 at 6 n.2. Therefore, the Court considers them together as well.

Argrow challenges the ALJ's rejection of grasping limitations found by Dr. Livingston, a consultative examiner, Dr. Oyewo, a state agency consultant, and Dr. Neway, another state agency consultant, arguing he "offers no explanation in his decision" for that rejection. Doc. 18 at 11-12. As the Acting Commissioner's response indicates, doc. 21 at 8 n.4, the regulations governing Argrow's claim do not require the ALJ to defer or give any specific weight to medical opinions. 20 C.F.R. § 404.1520c(a); *see also Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 896-98 (11th Cir. 2022) (affirming the new regulations). Under the applicable regulation, to determine the persuasiveness of a medical opinion, the ALJ focuses on factors that include supportability, consistency, the medical source's relationship with the claimant, and the medical source's specialization. 20 C.F.R. § 404.1520c(c). Argrow does not dispute that application. *See generally* doc. 22.

The Eleventh Circuit has recently summarized the effect of the 2017 amendments to the SSA's regulations. *See Matos v. Comm'r of Soc. Sec.*, 2022 WL 97144, at *4 (11th Cir. Jan. 10, 2022).

> This new regulatory scheme no longer requires the ALJ to either assign more weight to medical opinions from a claimant's treating source or explain why good cause exists to disregard the treating source's opinion. Under the new regulations an ALJ should focus on the persuasiveness of medical opinions and prior administrative medical findings by looking at five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. [20 C.F.R.] § 404.1520c(c)(1)-(5).
>
> The ALJ may, but is not required to, explain how she considered factors other than supportability and consistency, which are the most important factors. *Id.* § 404.1520c(b)(2). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative finding(s) will be." *Id.* § 404.1520c(c)(1). And "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

*Id.* As for the two most important factors, "supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record."

*Cook v. Comm'r of Soc. Sec.*, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021).

The ALJ appropriately analyzed the opinions from the three doctors identified above and found them all to be unpersuasive. Tr. 21, 23. He found Livingston's opinion unpersuasive because "it is overly restrictive given [her] clinical exam findings" and, relative to Argrow's inability to fully flex her hands, "her work at the nursery shows that she can use her hands." Tr. 21. The ALJ also noted Livingston's records indicating Argrow was able to hold a pen to write legibly, remove and put on her shoes without difficulty, and complete household chores. Tr. 20-21, 22.[3] This demonstrates the ALJ's consideration of whether Livingston articulated support for her own opinion, and his consideration of whether Livingston's opinion was consistent with other evidence in the record. *Cook*, 2021 WL 1565832 at 3. As for the two state agency consulting doctors, he found their opinions unpersuasive because they did not examine the claimant, and their finding of "medium exertional level capacity" was inconsistent with more recent medical records supporting

---

[3] As the Acting Commissioner points out, doc. 21 at 9-10, Dr. Livingston also opined that Argrow had no significant limitations that would affect her ability to perform fine and gross movements effectively and "has dexterity appropriate for use of a computer keyboard, buttoning cloths and tying shoelaces." Tr. 495.

13

*greater* restrictions. Tr. 23. Again, this analysis complies with the new regulatory framework.

Overall, the ALJ's analysis of Argrow's RFC is supported by substantial evidence. He reviewed Argrow's testimony, tr. 20, the medical evidence, tr. 20-22, the medical opinions described above, and Argrow's work history and activities of daily living, tr. 22, in formulating a sedentary RFC with additional limitations for using her hands to finger and feel only occasionally. Tr. 19. It also complies with the Appeals Council's instruction to "provide appropriate rationale with specific references to evidence of record in support of the assessed limitations." Tr. 160. Plaintiff has not identified any error with the ALJ's formulation of the RFC warranting remand.

Finally, Argrow argues it is "unclear" whether the assessed RFC precludes her past relevant work as a security guard as she actually performed it, and that "input from a vocational expert is needed in this case." Doc. 18 at 9-11. She contends the ALJ's conclusion that "[s]he did not have to use her hands more than occasionally," tr. 23, is "speculative and unsupported." Doc. 18 at 10. The Acting Commissioner responds that substantial evidence supports the ALJ's conclusion that Plaintiff

could perform her past relevant work, and Plaintiff failed to meet her burden on the issue. Doc. 21 at 11-13. Plaintiff did not address the Acting Commissioner's response to this issue in her reply. *See generally* doc. 22.

The claimant bears the initial burden of proving that she is unable to perform her previous work. *Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990) (citing *Cannon v. Bowen*, 858 F.2d 1541, 1544 (11th Cir. 1988); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986)). "The testimony of a vocational expert is only required . . . after the claimant has met [her] initial burden of showing that [she] cannot do past work." *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). Here, the ALJ addressed the claimant's own testimony about her job duties as a security guard at a college dorm. Tr. 23. The ALJ determined that, based on Argrow's testimony, she could perform this past relevant work, since, relevant here, she "did not have to use her hands more than occasionally." *Id.* Plaintiff's own testimony supports his finding, and she has not met her burden of showing that she can no longer perform her past relevant work. The ALJ's determination is based on substantial evidence and does not require remand.

## IV. CONCLUSION

For the reasons set forth above, the final decision of the Acting Commissioner is **AFFIRMED**. The Clerk of Court is **DIRECTED** to **CLOSE** this case.

**SO ORDERED**, this 29th day of September, 2023.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA